## UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

NICOLE BEMIS, )
)
PLAINTIFF )
)
v. ) CIVIL No. 2:19-cv-404-DBH
)
THOMAS W. HARKER,[1] )
*Acting Secretary of the Navy,* )
)
DEFENDANT )

## DECISION AND ORDER ON DEFENDANT'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

The parties have agreed that this case should be bifurcated between a sexual harassment claim and a retaliation claim and that I should decide first whether the plaintiff exhausted administrative remedies on her sexual harassment claim such that she can proceed on that claim in court. I conclude that the plaintiff withdrew her Equal Employment Opportunity ("EEO") contact and failed to make a timely claim. I therefore **GRANT** the defendant's motion for partial summary judgment because the plaintiff failed to exhaust administrative remedies for her sexual harassment claim.

---

[1] Thomas W. Harker became Acting Secretary of the Navy on January 20, 2021. See Def.'s Mot. for Partial Summ. J. at 1 n.1 (ECF No. 40). Pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted for his predecessor. The Clerk's Office shall amend the case caption to add Thomas W. Harker and terminate Thomas B. Modly as the defendant.

## Procedural History

The plaintiff Nicole Bemis filed a Complaint against the Secretary of the Navy for Title VII sexual harassment (Count I) and retaliation (Count II) at Portsmouth Naval Shipyard.  Compl. (ECF No. 1).  The parties seek a decision on the sexual harassment claim by summary judgment or trial before engaging in discovery and litigation over the retaliation claim.  (ECF No. 10).  They have jointly filed a stipulation of facts.  (ECF No. 37).  They have also filed what they call a joint stipulated record.[2]  The defendant has moved for summary judgment on the sexual harassment claim, arguing that Bemis withdrew her EEO complaint and therefore did not exhaust the administrative remedies necessary to bring this action.  Def.'s Mot. for Partial Summ. J. at 8 (ECF No. 40).  Bemis has opposed the motion.  The parties have separately filed Statements of Material Facts and oppositions in connection with the motion.

## Facts

According to the Joint Stipulated Statement of Facts ("JSSF"), Bemis worked at the shipyard as a Physical Science Technician, then as a Radiac Program Assistant.  JSSF ¶¶ 1, 7.  As a new employee, Bemis attended a number of anti-harassment trainings.  Id. ¶¶ 2-4.  Beginning in summer 2016, one of her supervisors began pursuing a personal relationship with her, emailing, texting, and speaking to her at work.  Id. ¶ 6.  He did not contact her after January 20, 2017.  Id. ¶¶ 8-10.

---

[2] The language introducing the "Joint Stipulated Record" appears to stipulate only the authenticity of the documents it attaches, not their admissibility.  (ECF No. 38).  As such, I do not rely upon it on this summary judgment motion unless a document's admissibility is separately established (as in an undisputed statement of material facts).

On March 2, 2017, Bemis contacted a union representative at the shipyard to complain about the supervisor's conduct.  Id. ¶¶ 11-12.  The union representative took Bemis to the shipyard's Employee Assistance Program and EEO offices.  Id. ¶ 13.  Bemis met with an EEO specialist on March 2 and 3 and alleged that the supervisor had sexually harassed her.  Id. ¶¶ 14-15.  The EEO specialist counseled Bemis that, regardless of whether she pursued an EEO claim, shipyard management would investigate pursuant to 10 U.S.C. § 1561. Id. ¶¶ 17, 19.  Bemis was initially confused about the two processes, and the specialist described them several times.  Id. ¶ 18.  The specialist explained that if Bemis withdrew her EEO complaint and later changed her mind, she could return to the office, but that her sexual harassment complaint would only be timely if she reinitiated EEO contact within 45 days of the last incident of alleged harassment.  Def.'s Statement of Undisputed Material Facts ("SUMF") ¶ 9 (ECF No. 39); Pl.'s Resp. to Def.'s SUMF ¶ 9 (ECF No. 41).  Bemis was also told that the supervisor would be removed from her building.  JSSF ¶ 20.  During the March 3 meeting, Bemis said that she wanted to see how the shipyard investigation process played out before pursuing an EEO claim.  Id. ¶ 21.  She initialed and signed a document entitled "Notice of Rights and Responsibilities." Id. ¶ 22.  At the bottom she handwrote: "I have no interest in pursuing this matter in the EEO process and wish to withdraw my contact."  Id.  The EEO specialist provided Bemis with the form and the language that she handwrote at the bottom.  Id. ¶ 23.

The shipyard conducted its investigation and on April 4 the shipyard Commander wrote: "I have reviewed the report of the investigation and I

substantiated that the conduct you described occurred.  Appropriate action regarding [the supervisor] is being taken." Id. ¶¶ 34-40.

On April 17, Bemis saw the supervisor at the shipyard when the two were walking in different directions on opposite sides of the street.  Id. ¶ 42.  Bemis saw the supervisor smile at her but did not hear him say anything or see him make any gestures.  Def.'s SUMF ¶¶ 26-27; Pl.'s Resp. to Def.'s SUMF ¶¶ 26-27.  Neither stopped walking and Bemis observed the supervisor look at her for fewer than 10 seconds.  Def.'s SUMF ¶¶ 25, 29; Pl.'s Resp. to Def.'s SUMF ¶¶ 25, 29.  Following the sighting she contacted a number of individuals at the shipyard with her concerns, including the EEO specialist.  JSSF ¶¶ 43-49.  In her April 19 email to the EEO specialist, Bemis stated that she had been shocked to see the supervisor still at the shipyard; that the shipyard would not tell her what was to happen to him; and that she was "very uncomfortable with [her] surroundings and [was] not satisfied with knowing no outcome." Id. ¶ 49.  She also inquired how much time she had remaining to file an EEO complaint.  Id.  In response, the EEO specialist set up a meeting with Bemis for the following day.  Id. ¶ 50.  Between March 3 and April 19, 2017, Bemis did not contact the EEO office regarding her sexual harassment allegations against the supervisor.[3] Id. ¶ 53.

On June 21, Bemis filed a formal EEO discrimination complaint.  Id. ¶ 64.  In a letter dated July 19, 2017, the shipyard EEO office dismissed Bemis's sexual harassment claim as untimely and accepted her other claims.  Id. ¶ 66.

---

[3] Bemis visited the EEO office around March 29, 2017, in order to complain of an incident that she alleged was done *in retaliation* for her having reported the sexual harassment.  Def.'s Statement of Undisputed Material Facts ¶¶ 16-17 (ECF No. 39); Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶¶ 16-17 (ECF No. 41).

4

## ANALYSIS

By regulation, an EEO complainant in federal employment must contact an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1).[4] That time limit is extended in some circumstances, such as where the individual was not notified of the time limits or was prevented from contacting the counselor in time. Id. § 1614.105(a)(2). Several courts have held that withdrawal of an EEO charge causes a failure to exhaust administrative remedies. See, e.g., Hanfland v. Donahue, No. 10-cv-6106-FPG, 2015 WL 4930582, at *6-7 (W.D.N.Y. Aug. 18, 2015) (applying the 45-day rule and concluding that the plaintiff withdrew her complaint); Baber v. Runyon, No. 97 Civ. 4798(DLC), 1998 WL 912065, at *5 (S.D.N.Y. Dec. 30, 1998) (collecting cases).

Here, Bemis knowingly and voluntarily withdrew her EEO contact on March 3. She was not under the influence of any substance and no one in the EEO office made threats or promises to her. See JSSF ¶¶ 24-32. The EEO process and time limits were explained to her. See id. ¶¶ 17-18; Def.'s SUMF ¶ 9; Pl.'s Resp. to Def.'s SUMF ¶ 9. Although she did not draft the language, what she wrote at the bottom of the form—"I have no interest in pursuing this matter in the EEO process and wish to withdraw my contact"—amounted to a clear withdrawal of her EEO contact.[5] Her later deposition testimony that she

---

[4] Bemis does not challenge the validity of this regulatory time limit, although she says it is not jurisdictional. Pl.'s Obj. at 10 (ECF No. 43) (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 398 (1982)).

[5] In her objection, Bemis contends that she withdrew only her "contact" and not her "claim." Pl.'s Obj. at 12. She neither cites authority for this theory nor shows how it helps her. In fact, she had no claim to withdraw on March 3 because she had not yet made a claim.

did not understand the statement, <u>see</u> Def.'s SUMF ¶ 15; Pl.'s Resp. to Def.'s SUMF ¶ 15; Ex. A at 60-61, Stipulated R. (ECF No. 38-1), does not change the result.  "A person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that [s]he did not read it, or that it was not explained or that [s]he did not understand it."  <u>Bowers v. Nicholson</u>, 271 F. App'x 446, 449 (5th Cir. 2008) (cleaned up).

Bemis says that her claim is nevertheless timely under the "continuing violation" doctrine because of her across-the-street encounter with her former supervisor on April 17.  The Supreme Court has recognized that "[h]ostile [work] environment claims are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct."  <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 115 (2002).  The continuing violation doctrine allows a plaintiff to recover for acts that would otherwise be time-barred, so long as an "anchoring act" falls within the time period.  <u>Brader v. Biogen Inc.</u>, 983 F.3d 39, 61 (1st Cir. 2020).  An "anchoring act" must "substantially relate" to the earlier conduct.  <u>Id</u>. (citing <u>Noviello v. City of Boston</u>, 398 F.3d 76, 86 (1st Cir. 2005)).  It must also constitute "severe or pervasive harassment that altered the conditions of . . . employment and created an abusive work environment" and "stem from an impermissible motivation."  <u>Id</u>. at 62 (cleaned up).

The April 17 encounter does not amount to an anchoring event.  Bemis argues that her sighting of her harasser and his "smile" were "very much a continuation of his sexual harassment . . . from August 2016 through January 20, 2017."  Pl.'s Obj. at 16 (ECF No. 43).  Although the event was

6

traumatic for Bemis, subjective interpretation does not rule the day.[6]   The April 17 encounter represents neither harassment "sufficiently severe or pervasive so as to alter the conditions of [her] employment" nor harassment "substantially related" to the earlier alleged conduct.  Brader, 983 F.3d at 62.[7]

Bemis also urges that her harassment claim is timely on the basis that her retaliation claim is timely.  Pl.'s Obj. at 17-18.  She reasons that her retaliation claim is "substantially related" to her harassment claim and that, but for the harassment allegations, there would be no retaliation claim.  Id.  The First Circuit has rejected this logic.  In Noviello, it held that a timely retaliation claim will not revive an untimely harassment claim because the animus behind the harassment is distinct from that behind the retaliation.  Noviello, 398 F.3d at 87-88.[8]

Finally, Bemis argues that the shipyard should be equitably estopped from contending that her claim is untimely because the EEO specialist erred in

---

[6] Brader v. Biogen Inc., 983 F.3d 39, 62 (1st Cir. 2020) ("While we do not doubt Brader felt harassed, . . . Brader offers no evidence as to how, exactly, any of Weiskopf's behavior actually constituted harassment in that it impacted his working conditions in such a way that could be reasonably viewed by a jury as being carried out in a severe or pervasive fashion.").

[7] See also Cordero-Suárez v. Rodriguez, 689 F.3d 77, 83 (1st Cir. 2012) (events where a former supervisor allegedly "came near [the plaintiff] in an intimidating manner and stared at her fixedly" and commented that he "would not rest" until the plaintiff lost her job did not amount to "severe and pervasive" conduct).  As the First Circuit has said, "Common sense teaches that a plaintiff cannot resuscitate time-barred acts, said to be discriminatory, by the simple expedient of linking them to a non-identical, *non-discriminatory*, non-time barred act."  Lockridge v. Univ. of Me. Sys., 597 F.3d 464, 474 (1st Cir. 2010) (quoting Lawton v. State Mut. Life Assurance Co. of Am., 101 F.3d 218, 222 (1st Cir. 1996)).

[8] The First Circuit explained:

> Even when retaliation is derivative of a particular act of harassment, it normally does not stem from the same animus.  Most often, retaliation is a distinct and independent act of discrimination, motivated by a discrete intention to punish a person who has rocked the boat by complaining about an unlawful employment practice.  That is a different animus than the sexual animus that drove the original harassment.

Noviello v. City of Boston, 398 F.3d 76, 87 (1st Cir. 2005) (citations omitted).

communicating the process to her.  Pl.'s Obj. at 18-20.  The First Circuit allows equitable exceptions in this context only sparingly, see Vera v. McHugh, 622 F.3d 17, 30 (1st Cir. 2010), and Bemis has not demonstrated that the EEO specialist erred in what she told her, thereby contributing to Bemis's failure to make a timely claim.

I conclude that Bemis failed to exhaust administrative remedies necessary to bring her sexual harassment claim in court.  The defendant's motion for summary judgment on Count I is **GRANTED**.

The Magistrate Judge shall confer with the parties about proceeding on Count II.

**SO ORDERED.**

**DATED THIS 6TH DAY OF APRIL, 2021**

/s/ D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**